**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Flint Wood, et al., | No. CV-12-08098-PCT-DGC |
| Plaintiff, | **ORDER** |
| v. | |
| Thomas Betlach, Director of the Arizona Health Care Cost Containment System, and Kathleen Sebelius, Secretary of the United States Department of Health and Human Services, in their official capacities, | |
| Defendants. | |

Defendant Thomas Betlach is Director of Arizona's Medicaid program, known as the Arizona Health Care Cost Containment System ("AHCCCS"). Defendant Kathleen Sebelius is Secretary of the United States Department of Health and Human Services ("DHHS"), which approves state Medicaid plans. Plaintiffs represent a class of persons eligible for benefits under the state's Medicaid program and who are subject to higher copayments under Arizona Administrative Code Rule R9-22-711(F) (the "Copayments Rule").

Plaintiffs have asked the Court to preliminarily enjoin Defendant Sebelius' approval of higher copayments under the Copayments Rule, and to enjoin Defendant Betlach from imposing higher copayments and allowing medical providers to withhold services from AHCCCS participants who are unable to make the copayments. Doc. 16 at 2. Defendants Betlach and Sebelius filed separate responses (Docs. 28, 39), and Plaintiffs filed corresponding replies. Docs. 61, 47. With the Court's permission (Doc. 63), Defendants filed a joint sur-reply (Doc. 66). The Court heard oral argument on

September 24, 2012. For the reasons that follow, the Court will deny Plaintiffs' request for a preliminary injunction.

**I.      Background.**

**A.      Overview of the Medicaid Program.**

Congress created Medicaid in 1965 by adding Title XIX to the Social Security Act, 42 U.S.C. §§ 1396-1396w-5. Medicaid was enacted, in part, to enable states "to furnish . . . medical assistance on behalf of families with dependent children and of aged, blind, or disabled individuals, whose income and resources are insufficient to meet the costs of necessary medical services." 42 U.S.C. § 1396-1. States that wish to receive federal funds through Medicaid must submit a state plan for approval by the Secretary of DHHS. *Id.* at § 1396a(a)-(b). State Medicaid plans must cover those who are "categorically needy" (those with dependent children who qualify for welfare, the disabled, children and pregnant women who qualify). 42 U.S.C. § 1396a(a)(10)(A)(i). *Pharm. Research & Mfrs. of Am. ("PhRMA") v. Walsh*, 583 U.S. 644, 650-651, 651 n. 4 (2003). States may additionally opt to cover the "medically needy" (those who meet the non-financial eligibility requirements of Medicaid, but whose incomes exceed the eligibility limits). 42 U.S.C. § 1396a(a)(10)(C). *PhRMA* at 651 n. 5. Unless specifically waived, state plans must comply with all provisions of the Medicaid Act. *Spry v. Thompson*, 487 F.3d 1272, 1273 (9th Cir. 2007); *see also Beno v. Shalala*, 30 F. 3d 1057, 1068 (9th Cir. 1994) ("While states are not required to participate in these federal programs, if they elect to participate, compliance with . . . regulations is mandatory.")

Under Section 1115 of the Social Security Act, the Secretary of DHHS may waive certain Medicaid Act requirements for an approved "experimental, pilot, or demonstration project" that the Secretary finds "is likely to assist in promoting the objectives of" the Medicaid Act. 42 U.S.C. § 1315. Section 1115 demonstration projects may cover Medicaid ineligible populations – known as "expansion populations" – who are not covered under the state plan. *Id.*; *Spry*, 487 F.3d at 1274-5. State expenditures for these projects may be counted as expenditures under the state plan for federal

reimbursement purposes.  42 U.S.C. § 1315(a)(2)(A).

States are permitted, with some exceptions, to impose cost-sharing provisions for both the mandatory ("categorically needy") and optional ("medically needy") populations covered by state Medicaid plans.  42 U.S.C. § 1396o(a) and (b).  These charges must be nominal in amount.  *Id.* at § 1396o(a)(3) & (b)(3).  *See Spry*, 487 F.3d at 1276.  The nominal copay requirements do not apply to expansion populations.  *Id.*, *Newton-Nations v. Betlach*, 660 F.3d 370, 379-80 (9th Cir. 2011).

### B.    Arizona's Medicaid-Funded Plans.

Arizona participates in Medicaid through AHCCCS.  Docs. 16 at 11, 39 at 7; A.R.S. §§ 36-2901-2972.  AHCCCS administers Arizona's Medicaid plan, its Medicaid-approved demonstration projects, and certain state-only initiatives.  Doc. 39 at 6-7.

In November 2000, Arizona citizens passed Proposition 204, which required the state to expand AHCCCS coverage to all persons with incomes below the federal poverty level ("FPL").  Doc. 16 at 13; A.R.S. § 36-2901.01.  In 2001, the state received approval from DHHS for a demonstration project under Section 1115.  The Secretary's approval allowed the state to claim expenditures for AHCCCS coverage provided to individuals below the FPL who did not have dependent children living with them – the population referred to as "childless adults" – who were not otherwise eligible for AHCCCS coverage under Arizona's state Medicaid plan.  Docs. 16 at 13; 39 at 7.

AHCCCS beneficiaries covered as part of this "expansion population" were charged the same nominal copayments as regular Medicaid recipients – $1.00 per doctor's visit, $5.00 for nonemergency use of emergency rooms, and $5.00 for nonemergency surgery.  Doc. 16 at 13; Ariz. Admin. Code R9-22-711(A).  The plan prohibited health care providers from refusing services to those who could not make the copayments.  Ariz. Admin. Code R9-22-711(B).

In 2003, Arizona implemented the Copayment Rule and increased copayments for those in the expansion population.  Doc. 16 at 14, Ariz. Admin. Code R9-22-711(E).  The Rule also gave medical providers discretion to refuse services to members of the

expansion population for inability to make the increased copayments. *Id.* Arizona applied for and received approval from the Secretary of DHHS for this modification to its demonstration project. Doc. 39 at 7. The Copayment Rule, which was found at Arizona Administrative Code R9-22-711(E), required members of the expansion population to pay $4.00 for every generic prescription or brand name prescription where no generic drug is available, $10.00 for every brand name prescription when a generic drug is available, $5.00 for every physician office visit, and $30.00 for non-emergency use of an emergency room. Doc. 16 at 14. The Secretary's approval for the initial demonstration project expired in 2006, but the Secretary approved an additional five-year demonstration project that included the Copayment Rule (renumbered to Rule R9-22-711(F)). Docs. 16 at 14; 39 at 7.

Because the demonstration project was scheduled to expire on September 30, 2011, the State wrote to the Secretary on March 31, 2011, and asked her to approve "a new Section 1115 Research and Demonstration Project Waiver . . . for the period of October 1, 2011, through September 30, 2016." Doc. 33-9 at 442. The proposed new project covered the childless adult population covered by the previous demonstration project, but with enrollment frozen at lower levels. It also included the Copayment Rule first implemented in 2003 and found in Rule R9-22-711(F), as well as other modifications to the program. *Id.*; Doc. 34 at 1-34. The Secretary approved the new demonstration project on October 21, 2011. Doc. 32-1 at 4-7. The project was approved until 2016, with the Copayment Rule effective until December 31, 2013. *Id.*

Plaintiffs brought this lawsuit on the basis of the Secretary's October 21, 2011 decision, but they purport to challenge only the Copayment Rule portion of that decision. In other words, Plaintiffs ask the Court to vacate the Copayment Rule and leave the rest of the Secretary's decision and the demonstration project in place.

  **C.** ***Newton-Nations* Litigation.**

Following the Secretary's 2003 approval of the Copayment Rule, which modified the 2001 demonstration project by increasing copayments, several plaintiffs who

qualified for AHCCCS under the demonstration project brought suit in this district challenging the Secretary's approval of the increased copayments as arbitrary and capricious and in violation of the Medicaid Act. *See Newton-Nations v. Rogers*, 221 F.R.D. 509, 510 (D. Ariz. 2004). Judge Earl H. Carroll granted the plaintiffs' motion for class certification, with the class defined as "all Arizona Health Care Cost Containment eligible persons in Arizona who have been or will be charged copayments pursuant to Arizona Administrative Code Amended Rule R9-22-711(E)." *Id.* at 512. Judge Carroll granted the plaintiffs' request for a preliminary injunction, enjoining the state from imposing the higher copayments and from allowing medical providers to refuse services for inability to pay. *Newton-Nations v. Rogers*, 316 F. Supp. 2d 883, 891 (D. Ariz. 2004). The injunction was lifted on March 29, 2010, when Judge Carroll granted summary judgment in favor of the defendants. *Newton-Nations v. Rogers*, No. CV 03-2506-PHX-EHC, 2010 WL 1266827 at *21 (D. Ariz. March 29, 2010).

The plaintiffs in *Newton-Nations* appealed, and the Ninth Circuit affirmed in part and reversed in part. *Newton-Nations v. Betlach*, 660 F.3d 370, 383-84 (9th Cir. 2011). The Ninth Circuit found that the district court had properly granted summary judgment in favor of the defendants on the claim that the Secretary violated the Medicaid Act and the APA when he determined that a waiver of the copayment requirement was not required for Arizona's expansion populations. *Id.* at 379-80. The Court of Appeals found that the Secretary had reasonably interpreted the Medicaid Act to mean that persons not covered by the state Medicaid plan "are expansion populations not protected by the § 1396o cost-sharing limits." *Id.* at 379. The Ninth Circuit reversed the grant of summary judgment on the claim that the Secretary's approval of the increased copayments was arbitrary and capricious, finding that "[t]he administrative record does not demonstrate that the Secretary made the requisite findings required by *Beno*." *Id.* at 381 (citing *Beno v. Shalala,* 30 F.3d 1057 (2011)). The Ninth Circuit found "no evidence that the Secretary made 'some judgment that the project ha[d] a research or a demonstration value.'" *Id.* (quoting *Beno*, 30 F.3d at 1069). The Ninth Circuit remanded to the district court with

instructions to vacate the Secretary's decision and remand to the Secretary for further consideration. *Id.* at 382.

On remand, Judge Rosslyn O. Silver found the case moot because the Secretary's 2003 approval of the Copayment Rule had expired and "the copayments currently in effect are due to a *new* program based on a *new* administrative record." *Newton-Nations v. Betlach*, 03-02506-PHX-ROS, Doc. 261 at 4 (emphasis in original). Judge Silver stated that the plaintiffs could file a new suit on the new record. *Id.* Plaintiffs promptly filed this action. Doc. 1.

**II.    Analysis.**

Plaintiffs ask the Court to enjoin only the portion of the Secretary's October 21, 2011 decision that approved the increased copayments, leaving in place the rest of the 2011 demonstration project and its coverage for childless adults. Docs. 5 at 2, 16 at 25.[1] This narrow focus raises the preliminary question of whether the copayment provisions are severable from the larger demonstration project that was approved by the Secretary.

Courts may set aside part of an agency action only if it is severable from the rest of the agency's action. *See Arizona Pub. Serv. Co. v. EPA*, 562 F.3d 1116, 1122 (10th Cir. 2009). "Whether an administrative agency's order or regulation is severable, permitting a court to affirm it in part and reverse it in part, depends on the issuing agency's intent." *North Carolina v. FERC,* 730 F.2d 790, 795-96 (D.C. Cir. 1984). Thus, "[w]here there is substantial doubt that the agency would have adopted the same disposition regarding the unchallenged portion if the challenged portion were subtracted, partial affirmance is improper." *Id.*

The Secretary's October 21, 2011 approval letter made clear that the copayments were an integral part of the larger program's coverage of childless adults. The letter stated that "[t]he new Demonstration . . . will continue to provide the State authority to cover groups not currently covered under its Medicaid State plan[,]" including the

---

[1] Plaintiffs' counsel affirmed at oral argument that they challenge only the copayment provisions in the Secretary's October 21, 2011 decision.

- 6 -

childless adult population the state elected to cover following the expiration of the previous demonstration project. Doc. 32-1 at 5. The letter went on to state:

> [W]e understand from the State that the imposition of the mandatory copayments on this population is necessary in order to prevent the State from implementing alternatives such as covering this population at a lower percentage of the Federal poverty level (FPL), a result that would jeopardize current coverage levels or result in diminished benefits for this population. Additionally, as your submissions reflect, the imposition of these co-payments is only one element of the Demonstration and is tied to other elements. As a result, the copayments are not viewed in isolation, but are considered in the context of the Demonstration as a whole, which is intended to increase access to care and improve quality of care for the State's population as a whole and for the expansion populations in particular.

Doc. 32-1 at 5, AR 3.

The Secretary's letter clearly states that she viewed the copayment provisions as an integral part of the entire demonstration project she was approving under Section 1115 on October 21, 2011. She specifically noted that inclusion of the increased copayments was needed to avoid other modifications to the demonstration project such as reduced benefits. Where the express language of an agency's approval links a particular provision with the larger project, there clearly is "substantial doubt" that the agency would have approved the project without the challenged provision, and the challenged provision therefore cannot be severed and invalidated on its own. *North Carolina,* 730 F.2d at 795-96. In *North Carolina*, the D.C. Circuit looked to the "very language used by the Commission," including such statements as "this disposition . . . is taken only in conjunction with the approval of the overall settlement," and "this result is a comprehensive settlement which, as a package, appears reasonable," to determine that "the Commission's order is a unitary one and cannot be severed [as petitioners request]" 730 F.2d at 795-96.

More recently, in *North Carolina v. EPA*, 531 F.3d 896, 929 (D.C. Cir. 2008), the D.C. Circuit vacated and remanded the EPA's Clean Air Interstate Rule ("CAIR") in its entirety, even though petitioners had challenged only discrete portions of the rule. The

Circuit found that the EPA had been "quite consistent that CAIR was one, integral action" – the EPA had justified separate portions of CAIR as "complementary measures to mitigate . . . pollution." *Id.* The Court of Appeals explained that it could not "pick and choose" which portions of the rule to preserve, concluding that because "CAIR is a single, regional program, as EPA has always maintained, . . . all its components must stand or fall together." *Id.*; *see also*, *Telephone and Data Systems, Inc. v. FCC*, 19 F. 3d 42, 50 (D.C. Cir. 1994) (finding *vacatur* of the whole agency order appropriate where "[t]he intertwined character of the order's component parts gives rise to a substantial doubt that a partial affirmance would comport with the Commission's intent.").

Conversely, in *Arizona Public Service*, the Tenth Circuit vacated and remanded a single provision of the EPA's larger plan for limiting emissions from power plants because it found that the EPA would have adopted the plan even without the challenged provision. 562 F.3d at 1122. The court found that the plan's fugitive dust limit operated independently from the plan's remaining provisions and that "the functionality of the plan does not depend on enforcement of the fugitive dust limit." *Id*; *c.f. MD/DC/DE Broadcasters Assoc. v. FCC,* 236 F.3d 13, 22 (D.C. Cir. 2001) ("Whether the offending portion of a regulation is severable depends upon the intent of the agency *and* upon whether the remainder of the regulation could function sensibly without the stricken provision.") (emphasis in original).

Here, the Secretary's October 21, 2011 approval specifically stated that the copayments "are not viewed in isolation, but are considered in the context of the Demonstration as a whole," and recognized that rejecting the heightened and mandatory copayments as part of the overall plan could result in loss of coverage or diminished benefits for Arizona's low-income childless adult population. Doc. 32-1 at 5. In light of this clear agency intent, the copayment provisions are not severable from the larger demonstration project and enjoining only those provisions would be improper.

This is particularly true where, as here, the Secretary was charged with assessing whether the demonstration project "is likely to assist in promoting the objectives" of the

Medicaid Act. 42 U.S.C. § 1315(a). In *Fed. Power Comm'n v. Idaho Power Co.*, 344 U.S. 17 (1954), the Supreme Court looked to whether it had authority to eliminate a single challenged provision of the Federal Power Commission's authorization of a power plant project where the Commission was charged with determining whether the project "will be best adapted to a comprehensive plan . . . for the improvement and utilization of water power development, and for other beneficial public uses." *Id*. at 21. The Court found that "[w]hether that objective may be achieved if the contested conditions are stricken from the order is an administrative, not a judicial, decision." *Id.*

Plaintiffs argue that the Court can set aside the copayment provision on the basis of the Ninth Circuit's decision to vacate only the challenged copayments in *Newton-Nations*. Docs. 16 at 21, 47 at 3. But the only issue before the Ninth Circuit in *Newton-Nations* was the Secretary's 2003 approval of the increased copayments. The Section 1115 demonstration project, which had been approved by the Secretary in 2001, was not at issue. As the Ninth Circuit explained, the challenged administrative action was "a new rule that increased copayments on non-categorically needy participants and made those copayments mandatory." 660 F.3d at 376. The class in *Newton-Nations* was defined in terms of the new rule: persons "who have been or will be charged copayments pursuant to Arizona Administrative Code Amended Rule R9-22-711(E)." *Id.* at 377. Thus, the administrative action being reviewed in *Newton-Nations* was the Secretary's approval of the increased copayments only, not the demonstration project itself.

Here, by contrast, the copayment provisions have not been approved separately. The Secretary decided on October 21, 2011 to approve a "new Section 1115 Demonstration" that included far more than just increased copayment. *See* Doc. 32-1 at 4. As a result, the Court can set aside the copayment provisions and leave the rest of the demonstration project in place, as Plaintiffs ask, only if the copayments provisions are severable. They are not, for reasons explained above.

The Court cannot, as Plaintiffs request, "pick and choose" the portions of the Secretary's action it will vacate. *North Carolina*, 531 F.3d at 929. "[A]ll its components

- 9 -

must stand or fall together." *Id.* Thus, if Plaintiffs are correct that the Secretary violated the APA in her October 21, 2011 decision, the Court's only appropriate order would be a remand of the entire demonstration project to the Secretary for reconsideration. *See Florida Power & Light Co., v. Lorion*, 470 US 729, 744 (1985) ("[T]he proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation. The reviewing court is not generally empowered to conduct a *de novo* inquiry into the matter being reviewed and to reach its own conclusions based on such an inquiry."). Because Plaintiffs do not request such relief in their preliminary injunction motion, and the more limited relief requested in the motion cannot be granted, the motion will be denied. The Court need not address whether Plaintiffs otherwise meet the standards for a preliminary injunction.

**IT IS ORDERED** that Plaintiffs motion for preliminary injunction (Doc. 5) is **denied**.

Dated this 5th day of October, 2012.

_____
David G. Campbell
United States District Judge