**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Flint Wood, et al.,<br><br>    Plaintiffs,<br><br>v.<br><br>Thomas Betlach, Director of the Arizona Health Care Cost Containment System, and Kathleen Sebelius, Secretary of the United States Department of Health and Human Services, in their official capacities,<br><br>    Defendants. | No. CV-12-08098-PCT-DGC<br><br>**ORDER** |

The parties have filed motions for summary judgment. Docs. 106, 113. The motions are fully briefed. For reasons that follow, the Court will deny Plaintiffs' motion and grant Defendants' motion.[1]

**I. Background.**

Defendant Kathleen Sebelius ("the Secretary") is Secretary of the United States Department of Health and Human Services ("DHHS"), which approves state Medicaid plans. Plaintiffs are low income residents of Arizona who qualify for medical assistance under a statewide, Medicaid-approved demonstration project administered by the Arizona Health Care Cost Containment System ("AHCCCS").

---

[1] The requests for oral argument are denied because the Court is very familiar with this case, the issues are fully briefed, and oral argument will not aid the Court's decision. *See* Fed. R. Civ. P. 78(b); *Partridge v. Reich*, 141 F.3d 920, 926 (9th Cir. 1998).

The demonstration project provides coverage to low income childless adults who would not otherwise be Medicaid eligible. Patients in this "expansion population" are subject to mandatory copayments for doctor's visits, non-emergency use of emergency rooms, and prescription drugs. These copayments, enacted under Arizona Administrative Code Rule R9-22-711(F), are higher than the nominal copayments charged to low income disabled individuals and families with dependent children – the "chronically needy" population that states participating in Medicaid must cover. Plaintiffs represent a class of persons defined as "All Arizona Health Care Cost Containment System eligible persons in Arizona who have been or will be charged copayments pursuant to Arizona Administrative Code Amended Rule R9-22-711(F)." Doc. 87.

Plaintiffs filed a complaint seeking declaratory and injunctive relief from these copayment requirements. Doc. 1. Plaintiffs allege that the requirements violate Medicaid's nominality limits and its prohibition on denial of services for inability to make copayments (*id.*, ¶¶ 2, 36, 37); that the Secretary exceeded her authority under 42 U.S.C. § 1315 when she granted approval to the heightened and mandatory copayments in the demonstration project and thereby violated the federal Medicaid Act and the Administrative Procedure Act ("APA") (*id.*, ¶¶ 60, 95-96); and that AHCCCS Director Thomas Betlach violated the due process requirements of the U.S. Constitution and the Medicaid Act when he sent legally insufficient notices to those subjected to the higher copayments. *Id.*, ¶¶ 44, 99.

Plaintiffs filed a motion for class certification (Doc. 13) which the Court granted (Doc. 87), and a motion for preliminary injunction (Docs. 5) which the Court denied (Doc. 88). The Secretary filed a motion for summary judgment (Doc. 29), Plaintiffs filed a cross-motion for summary judgment (Doc. 67), and Director Betlach filed a cross-motion for summary judgment on Plaintiffs' second claim for relief (Doc. 85). The Court denied the Secretary's motion for summary judgment, granted Plaintiffs' cross-motion for summary judgment on their first claim for relief, remanded the Secretary's approval of Arizona's demonstration project, denied Plaintiffs' motion for summary judgment on

their second claim for relief, and granted Director Betlach's motion for summary judgment on Plaintiffs' second claim for relief. Doc. 102. The Secretary reconsidered Arizona's demonstration project and affirmed her prior decision in an approval letter dated April 8, 2013. Doc. 103-1. The parties have filed summary judgment motions in light of this decision.

### A.   Overview of the Medicaid Program.

Congress created Medicaid in 1965 by adding Title XIX to the Social Security Act, 42 U.S.C. §§ 1396-1396w-5. Medicaid was enacted, in part, to enable states "to furnish . . . medical assistance on behalf of families with dependent children and of aged, blind, or disabled individuals, whose income and resources are insufficient to meet the costs of necessary medical services." 42 U.S.C. § 1396-1. States that wish to receive federal funds through Medicaid must submit a state plan for approval by the Secretary of DHHS. *Id.* at § 1396a(a)-(b). State Medicaid plans must cover those who are "categorically needy" (those with dependent children who qualify for welfare, the disabled, children, and pregnant women who qualify). 42 U.S.C. § 1396a(a)(10)(A)(i). *Pharm. Research & Mfrs. of Am. ("PhRMA") v. Walsh*, 583 U.S. 644, 650-651, 651 n. 4 (2003). States may additionally opt to cover the "medically needy" (those who meet the non-financial eligibility requirements of Medicaid, but whose incomes exceed the eligibility limits). 42 U.S.C. § 1396a(a)(10)(C); *see PhRMA* at 651 n. 5. Unless specifically waived, state plans must comply with all provisions of the Medicaid Act. *Spry v. Thompson*, 487 F.3d 1272, 1273 (9th Cir. 2007); *see also Beno v. Shalala*, 30 F. 3d 1057, 1068 (9th Cir. 1994) ("While states are not required to participate in these federal programs, if they elect to participate, compliance . . . is mandatory.")

Under Section 1115 of the Social Security Act, the Secretary of DHHS may waive certain Medicaid Act requirements for an approved "experimental, pilot, or demonstration project" that the Secretary finds "is likely to assist in promoting the objectives of" the Medicaid Act. 42 U.S.C. § 1315. Section 1115 demonstration projects may cover Medicaid ineligible populations – known as "expansion populations" – who

are not covered under the state Medicaid plan. *Id.*; *Spry*, 487 F.3d at 1274-5. The waiver allows state expenditures for these projects to be counted as expenditures under the state plan for federal reimbursement purposes. 42 U.S.C. § 1315(a)(2)(A); *Spry*, 487 F.3d at 1277.

States are permitted, with some exceptions, to impose cost-sharing provisions for both the mandatory ("categorically needy") and optional ("medically needy") populations covered by Medicaid state plans. 42 U.S.C. § 1396o(a) & (b). These charges must be nominal in amount. *Id.* at § 1396o(a)(3) & (b)(3). *See Spry*, 487 F.3d at 1276. The nominality requirements do not apply to expansion populations. *Id.*, *Newton-Nations v. Betlach*, 660 F.3d 370, 379-80 (9th Cir. 2011).

### B.     Arizona's Medicaid-Funded Plans.

Arizona participates in Medicaid through AHCCCS. Docs. 16 at 11, 39 at 7; A.R.S. §§ 36-2901-2972. AHCCCS administers Arizona's state Medicaid plan, its demonstration projects, and certain state-only initiatives. Doc. 39 at 6-7.

In November 2000, Arizona citizens passed Proposition 204, which required the state to expand AHCCCS coverage to all persons with incomes below the federal poverty level ("FPL"). Doc. 16 at 13; A.R.S. § 36-2901.01. In 2001, the state received approval from DHHS for a demonstration project under Section 1115. Doc. 16 at 13. The Secretary's approval allowed the state to provide federally-reimbursed AHCCCS coverage to individuals below the FPL who did not have dependent children living with them – the expansion population referred to as "childless adults" – who would not otherwise be Medicaid eligible under a state plan. *Id.*; Doc. 39 at 7.

AHCCCS beneficiaries covered as part of this "expansion population" were charged the same nominal copayments as regular Medicaid recipients – $1.00 per doctor's visit, $5.00 for nonemergency use of emergency rooms, and $5.00 for nonemergency surgery. Doc. 16 at 13; Ariz. Admin. Code R9-22-711(A). The plan prohibited health care providers from refusing services to those who could not make the copayments. Ariz. Admin. Code R9-22-711(B).

In 2003, Arizona implemented the Copayment Rule and increased copayments for those in the expansion population. Doc. 16 at 14; Ariz. Admin. Code R9-22-711(E). The Copayment Rule gave medical providers discretion to refuse services to members of the expansion population who failed to pay the increased copayments. *Id.* Arizona applied for and received approval from the Secretary of DHHS for this modification to its demonstration project. Doc. 39 at 7. The Copayment Rule, which was then found at Arizona Administrative Code R9-22-711(E), required members of the expansion population to pay $4.00 for every generic prescription or brand name prescription where no generic drug is available, $10.00 for every brand name prescription when a generic drug is available, $5.00 for every physician office visit, and $30.00 for non-emergency use of an emergency room. Doc. 16 at 14. The Secretary's approval for the 2001 demonstration project expired in 2006, but the Secretary approved an additional five-year demonstration project that included the Copayment Rule (renumbered to Rule R9-22-711(F)). Docs. 16 at 14; 39 at 7.

The demonstration project was scheduled to expire on September 30, 2011. As a result, the State wrote to the Secretary on March 31, 2011, and asked her to approve "a new Section 1115 Research and Demonstration Project Waiver . . . for the period of October 1, 2011, through September 30, 2016." AR 004219. The proposed new project covered the childless adult population covered by the previous demonstration project, but with enrollment frozen at lower levels. *Id.* at 004220. It also included the Copayment Rule, renumbered to R9-22-711(F), as well as other modifications to the program. *Id.*; *Id.* at 000018. The Secretary approved the new demonstration project on October 21, 2011. *Id.* at 000001-5. The project was approved until 2016, with the Copayment Rule effective until December 31, 2013.[2] *Id.*; *Id.* at 000033.

Plaintiffs brought this lawsuit on the basis of the Secretary's October 21, 2011

---

[2] The federal Affordable Care Act is set to go into effect on January 1, 2014. As of that date, all those with incomes below the FPL will become a mandatory Medicaid population. 42 U.S.C. § 1396a(a)(10)(A)(i)(VIII). AR 000036-37. (Section 36(b)).

- 5 -

decision, but they purport to challenge only the Copayment Rule portion of that decision. In other words, Plaintiffs ask the Court to vacate the Copayment Rule and leave the rest of the Secretary's decision and the demonstration project in place.

### C. *Newton-Nations* Litigation.

Following the Secretary's 2003 approval of the Copayment Rule, which modified the 2001 demonstration project by increasing copayments for the childless adult population, several plaintiffs who were part of this expansion population brought suit challenging the Secretary's approval of the increased copayments as arbitrary and capricious and in violation of the Medicaid Act. *See Newton-Nations v. Rogers*, 221 F.R.D. 509, 510 (D. Ariz. 2004). Judge Earl H. Carroll granted the plaintiffs' motion for class certification, with the class defined as "all Arizona Health Care Cost Containment eligible persons in Arizona who have been or will be charged copayments pursuant to Arizona Administrative Code Amended Rule R9-22-711(E)." *Id.* at 512. Judge Carroll granted the plaintiffs' request for a preliminary injunction and enjoined the state from imposing the higher copayments or allowing medical providers to refuse services for inability to pay. *Newton-Nations v. Rogers*, 316 F. Supp. 2d 883, 891 (D. Ariz. 2004). The injunction was lifted on March 29, 2010, when Judge Carroll granted summary judgment in favor of the defendants. *Newton-Nations v. Rogers*, No. CV 03-2506-PHX-EHC, 2010 WL 1266827 at *21 (D. Ariz. March 29, 2010).

The Ninth Circuit affirmed Judge Carroll's decision in part and reversed it in part. *Newton-Nations v. Betlach*, 660 F.3d 370, 383-84 (9th Cir. 2011). The Court of Appeals found that Judge Carroll had properly granted summary judgment in favor of the defendants and against the plaintiffs on the claim that the then-Secretary violated the Medicaid Act and the APA when he determined that a waiver of the copayment requirement was not required for Arizona's expansion populations. *Id.* at 379-80. The Court of Appeals found that the Secretary had reasonably interpreted the Medicaid Act to mean that persons not covered by the state Medicaid plan "are expansion populations not protected by the § 1396o cost-sharing limits." *Id.* at 379. The Ninth Circuit reversed the

grant of summary judgment in favor of defendants on the claim that the Secretary's approval of the increased copayments was arbitrary and capricious, finding that "[t]he administrative record does not demonstrate that the Secretary made the requisite findings required by *Beno*." *Id.* at 381. The Ninth Circuit found "no evidence that the Secretary made 'some judgment that the project ha[d] a research or a demonstration value.'" *Id.* (quoting *Beno*, 30 F.3d at 1069). The Ninth Circuit remanded to the district court with instructions to vacate the Secretary's decision and remand to the Secretary for further consideration. *Id.* at 382.

On remand, Judge Roslyn O. Silver found the case moot because the Secretary's 2003 approval of the Copayment Rule had expired and "the copayments currently in effect are due to a *new* program based on a *new* administrative record." *Newton-Nations v. Betlach*, 03-02506-PHX-ROS, Doc. 261 at 4 (emphasis in original). Judge Silver stated that the plaintiffs could file a new suit on the new record. *Id.* Plaintiffs promptly filed this action. Doc. 1.

## II. Legal Standards.

Under the APA, a reviewing court must hold unlawful and set aside agency action found to be "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law[.]" 5 U.S.C. § 706(2)(A). A decision is arbitrary and capricious if the agency "has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise." *O'Keeffe's, Inc. v. U.S. Consumer Prod. Safety Comm'n*, 92 F.3d 940, 942 (9th Cir.1996) (quoting *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983)). The standard is deferential. The Court may not substitute its judgment for that of the agency.

*River Runners for Wilderness v. Martin*, 593 F.3d 1064, 1070 (9th Cir.2010).[3]

A party seeking summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Summary judgment is appropriate if the evidence, viewed in the light most favorable to the nonmoving party, shows "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Summary judgment is also appropriate against a party who "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322. Only disputes over facts that might affect the outcome of the suit will preclude the entry of summary judgment – the disputed evidence must be "such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

**III.   The Secretary's Motion for Summary Judgment.**

Approval of a demonstration project under Section 1115 requires that the Secretary examine three issues: "first, whether the project is an 'experimental, pilot or demonstration project.' Second, whether the project is 'likely to assist in promoting the objectives of the act.' Third, 'the extent and period' for which she finds the project is necessary." *Newton-Nations*, 660 F.3d at 380 (quoting *Beno*, 30 F.3d at 1068-71) (internal citations and initial capitals omitted). The Secretary seeks summary judgment on Plaintiffs' first claim for relief, arguing that she considered each of these factors and reasonably determined that the demonstration project as a whole could yield useful information for demonstration purposes, serves the objectives of the Medicaid Act by

---

[3] Plaintiffs argue that the Court should "accord a greater degree of scrutiny to a decision 'that arrives at substantially the same conclusion as an order previously remanded by the same court.'" Doc. 110-1 at 3 (quoting *Greyhound Corp. v. I.C.C.*, 668 F.2d 1354, 1358 (D.C. Cir. 1981)). The Court disagrees. *See City of Los Angeles v. U.S. Dep't of Transp.*, 165 F.3d 972, 977-78 (D.C. Cir. 1999).

providing coverage to those who would not otherwise be entitled to federally-funded medical assistance, and is limited in extent and duration. Doc. 114 at 2-3. The Secretary argues that Section 1315 requires no more (*id.* at 3), and that "[a]lthough she was not obligated to do so, the Secretary also reasonably determined that this copayment provision satisfied the requirements of Section 1115" (*id.*).

The parties continue to disagree on whether the Secretary's approval can only be upheld if the copayments, viewed in isolation, satisfy each of the three prongs under the Medicaid Act, or whether it is permissible for the Secretary to base her consideration of these factors upon the demonstration project as a whole. *See, e.g.*, Doc. 114 at 3, 9-12; Doc. 115-1 at 3-4, 7 n.3. The Court's prior order squarely addressed this issue: "The imposition of copayments on the expansion population may be relevant or even central to the Secretary's consideration of the experimental purpose of the demonstration project and of its overall effectiveness in furthering the objectives of the Medicaid Act, but nothing in *Newton-Nations*, *Beno*, or the language of Section 1115 persuades the Court that compliance with Section 1115 must be found in the copayments alone rather than the demonstration project as a whole." Doc. 102 at 11. The Court stands by that view.

Additionally, Plaintiffs argue that "[t]he April 8, 2013, approval letter does not review the demonstration as a whole but rather selectively reapproves five parts of the demonstration." Doc. 110-1 at 5 n.2. Because Plaintiffs challenge only the Secretary's re-approval of the copayment provision, Plaintiffs ask the Court to review the Secretary's consideration of the copayment provision only. Doc. 110-1 at 5-15. The Secretary responds by arguing that "the Secretary was entitled to consider the demonstration project in its entirety" (Doc. 114 at 9), and that "the Secretary expressly recited that she reviewed the 'demonstration as a whole,' rather than viewing the 'copayments for childless adults in isolation.'" Doc. 114 at 10 (quoting Doc. 103-1 at 3). The Secretary submits that she "listed a series of demonstration purposes that the project as a whole would serve, including testing the 'use of managed care entities to provide cost effective care coordination' and she found that the project as a whole would further the objective of the

Medicaid program to provide coverage for the expansion population." *Id.* (quoting and citing Doc. 103-1 at 2-3). The Secretary's summary judgment motion primarily argues, however, that the copayment provision satisfies Section 1115. *See* Doc. 114 at 12-16; Doc. 116 at 8-12. The Court accordingly will focus its discussion of the project's demonstration purposes and its promotion of the objectives of the Medicaid Act on the copayment provision.

### A. Is the Project an Experimental, Demonstration, or Pilot Project?

Congress enacted Section 1115 to ensure that certain of the Act's otherwise mandatory requirements did not "stand in the way of experimental projects designed to test out new ideas and ways of dealing with the problems of public welfare recipients." S. Rep. No. 1589, 87th Cong., 2d Sess. 20, *reprinted in* 1962 U.S.C.C.A.N. 1943, 1961, *cited in Beno*, 30 F.3d at 1069. Thus, approval for a project under this provision requires the Secretary to "make some judgment that the project has a research or a demonstration value." *Beno*, 30 F.3d at 1069. The Ninth Circuit has explained that a simple benefits cut unconnected to a research or experimental goal does not satisfy this requirement. *Id.* Instead, the Secretary "must make at least some inquiry into the merits of the experiment – she must determine that the project is likely to yield useful information or demonstrate a novel approach to program administration." *Id.*

The Secretary argues that she easily met this burden when granting approval to Arizona's demonstration project because "she found that the copayment provision would likely yield useful information 'related to the impact of the childless adult copayments on access, outcomes and costs of care.'" Doc. 114 at 12 (quoting Doc. 103-1 at 3). Like the prior approval letter, the April 2013 approval letter identifies four elements of the project that will be tested with respect to the effects of copayments on the state's childless adult population (Doc. 103-1 at 3) and incorporates by reference the Special Terms and Conditions ("STCs") (*id.* at 1). This portion of the Secretary's approval letter makes clear that the Secretary made at least "some judgment that the project has a research or a demonstration value." *Beno*, 30 F.3d at 1069.

1         Additionally, the April 2013 approval letter finds that "this demonstration – based in part on the hypotheses set forth in the STCs – will address existing gaps in the research or otherwise strengthen the research literature on cost sharing with respect to low-income adults by testing the impact of the childless adults' copayments on access, outcomes, and costs of care."  Doc. 103-1 at 4.  The approval letter identifies the following specific research areas:  (1) "the effect of cost sharing on the non-emergency use of the emergency department (ED) among Medicaid beneficiaries" (*id.*); (2) "the long-term effects of imposing copayments on the non-emergency use of the ED on Medicaid beneficiary health outcomes" (*id.*); and (3) "several areas that have not been extensively researched in the past, including the impact of copayments on provider participation, prescription drug utilization, and transportation" (*id.*).

          Plaintiffs argue that the Secretary failed to consider substantial evidence showing that none of the project's identified hypotheses tests anything new for demonstration purposes.  Doc. 115-1 at 10-14.  Plaintiffs rely principally on two declarations of Dr. Leighton Ku:  (1) the July 2012 Supplemental Declaration of Dr. Ku (Doc. 51), in which Dr. Ku opined that a massive multi-year, multi-state study of the use of emergency rooms by Medicaid patients in states that assessed a copayment for non-emergency use of the emergency room showed that there was no reduction in emergency room use (*id.*, ¶ 18); and (2) the September 2012 Second Supplemental Declaration of Dr. Ku (Doc. 72), in which he opined that the imposition of copayments on the use of the emergency room conflicted with the imposition of copayments on doctor visits because the "policies would counteract one another and it would be impossible to discern which policy is leading to which result" (*id.*, ¶ 7).

          The April 2013 approval letter notes that the Centers for Medicare & Medicaid Services ("CMS") "is aware of the research conclusions regarding the negative effects of cost sharing on low-income populations that objecting stakeholders advance as a basis for disapproving the mandatory copayments."  Doc. 103-1 at 4.  Accordingly, the Court does not agree that the Secretary ignored Dr. Ku's opinions or other evidence in the

administrative record indicating that the copayments have no experimental value. The Secretary explained her rationale for disagreeing with the substance of this evidence. Doc. 103-1 at 4. The Secretary was not required to do more. *See Earth Island Inst. v. U.S. Forest Serv.*, 697 F.3d 1010, 1020 (9th Cir. 2012) ("courts should not impose new requirements on agencies not imposed by the APA or a substantive statute.").

In rejecting Dr. Ku's opinions, the Secretary favorably cites the Declaration of Victoria Wachino, Director of the Children and Adults Health Programs Group at the CMS within DHHS. Doc. 103-1 at 4 n.3 (citing Doc. 66-1). Director Wachino is responsible for overseeing and supervising the Division of State Demonstrations and Waivers, which analyzes and processes state Section 1115 applications, and she was involved in approving Arizona's demonstration project. Doc. 66-1, ¶¶ 1-2, 5. Director Wachino affirms Dr. Ku's opinion that cost-sharing has been extensively researched, but states that "[c]ontrary to Dr. Ku's belief, CMS believes that the hypotheses outlined in the New Demonstration with respect to cost sharing may address existing gaps in or otherwise strengthen the research literature and will render information useful in crafting future public policy." Doc. 66-1, ¶¶ 12, 14. Director Wachino's Declaration, dated August 15, 2012 (Doc. 66-1), is not part of the administrative record on which the Secretary reconsidered and re-analyzed the demonstration project (Doc. 103-1 at 1) ("In light of this ordered remand, CMS has reconsidered the state's requests and re-analyzed the administrative record as of October 21, 2011"). Although the Court "may not consider reasons for agency action which were not before the agency," *Beno*, 30 F.3d at 1073 (citing *Bowen v. Am. Hosp. Ass'n*, 476 U.S. 610, 627 (1986)), the Wachino Declaration does show that the Secretary's conclusion is not "so implausible that it could not be ascribed to a difference in view or the product of agency expertise." *O'Keefe's, Inc.*, 92 F.3d at 942 (quoting *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983)).

The April 2013 approval letter shows that the Secretary considered and responded to Plaintiffs' substantive objections and that "the decision was based on a consideration

of the relevant factors[.]" *Beno*, 30 F.3d at 1073 (quoting *Overton Park*, 401 U.S. at 416). Plaintiffs may disagree with the Secretary's conclusion, but the Secretary has demonstrated that her consideration of the project's experimental purpose was not arbitrary and capricious.

**B.  Will the Project Likely Assist in Promoting the Objectives of the Act?**

The purpose of the Medicaid Act is to enable states "to furnish . . . medical assistance on behalf of families with dependent children and of aged, blind, or disabled individuals, whose income and resources are insufficient to meet the costs of necessary medical services." 42 U.S.C. § 1396-1. In furtherance of this purpose, Section 1115 waivers allow states to extend medical assistance to expansion populations. 42 U.S.C. § 1315(a)(2). This includes the childless adult population at issue in this case.

The Secretary argues that she "'considered the impact of the state's project on the persons' the Medicaid Act 'was enacted to protect.'" Doc. 114 at 14 (quoting *Newton-Nations*, 660 F.3d at 381). As evidence that she met this requirement, the Secretary points to this portion of the approval letter:

> In administering the joint federal-state Medicaid program, CMS is reasonably relying on the state's assertions about what alternative choices the state may make in the absence of CMS's approval. While we recognize the objection of some stakeholders that copayments will not result in cost savings, and even if we entirely agreed with this position, when weighed against the alternatives the state proposes as described above, we conclude that the childless adult expansion population is better served by being covered under this demonstration project – including having to make copayments for services – than it would be without any, or more limited, coverage by the state. We note that the state is under no obligation, prior to January 1, 2014, to provide coverage for this population at all.

Doc. 103-1 at 3.

Plaintiffs argue that the Secretary ignored evidence in the administrative record showing that the copayments are not an effective cost savings measure and are harmful to the objectives of the Medicaid Act. Doc. 110-1 at 5-9. But the approval letter references these objections and concludes otherwise based on the finding that the cost-saving

measures are a means to continue providing medical benefits that the state would otherwise have to cut due to budgetary concerns. *See* Doc. 103-1 at 2-3.

Plaintiffs also argue that the Secretary "blindly accept[ed] the State's request for the copayments." Doc. 115-1 at 6. This is not the case. The approval letter notes that the state was considering "alternatives, such as covering fewer people in this population by lowering the qualifying federal poverty level (FPL) percentage limit, reducing benefits for the currently-covered population, or eliminating coverage of this expansion population entirely." Doc. 103-1 at 2. The Secretary explicitly found the state's proposed alternatives credible because of "the state's decision to freeze enrollment for the childless adult eligibility group in the state's previous section 1115 demonstration . . . on July 8, 2011." *Id.* The Secretary did not make this judgment "blindly." Instead, the Secretary explained her decision based on both her expertise and the evidence before her. *See O'Keeffe's, Inc.*, 92 F.3d at 942.

In reaching her conclusion that the demonstration project as a whole furthers the objectives of the Medicaid Act, the Secretary considered the corresponding tradeoffs on those covered by the project and addressed Plaintiffs' objections that the copayments are not an effective cost saving measure. Doc. 103-1 at 3. The Secretary's "path may be reasonably discerned," *River Runners for Wilderness*, 593 F.3d at 1078, and, accordingly, the Secretary's consideration of the project's furtherance of the objectives of the Medicaid program was not arbitrary and capricious. *See Beno*, 30 F.3d at 1074 ("the record must be sufficient to support the agency action, show that the agency has considered the relevant factors, and enable the court to review the agency's decision." (citing *Fla. Power & Light Co. v. Lorion*, 470 U.S. 729, 744 (1985))).

**C.     Was the Project Approved for the Extent and Period Necessary?**

The Secretary argues that she only approved the copayments for a limited time, ending on December 31, 2013, thus fulfilling her obligation under Section 1115(a)(2)(A) to consider the extent and duration of the project. Doc. 114 at 17. Plaintiffs do not argue

- 14 -

that the Secretary failed to meet this obligation. *See* Docs. 110-1, 115-1. The Court finds that the Secretary's consideration of the extent and duration of the project was not arbitrary and capricious.

### D. Summary.

The Court will grant the Secretary's motion for summary judgment on Plaintiffs' first claim for relief on the ground that the Secretary's review of the three Section 1115 requirements was not arbitrary and capricious.

## IV. Plaintiffs' Cross Motion for Summary Judgment.

For the reasons discussed above, the Court will deny Plaintiffs' motion on the ground that Plaintiffs have not raised an issue of fact as to whether the Secretary's review of the three Section 1115 requirements was arbitrary and capricious.

**IT IS ORDERED:**

1. Plaintiffs' cross-motion for summary judgment (Doc. 106) is **denied**.
2. The Secretary's motion for summary judgment (Doc. 113) is **granted**.
3. The Clerk is directed to enter Judgment and terminate this action.

Dated this 26th day of July, 2013.

*David G. Campbell*
David G. Campbell
United States District Judge