**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Flint Wood, et al.,<br><br>    Plaintiffs,<br><br>v.<br><br>Thomas J Betlach, et al.,<br><br>    Defendants. | No. CV12-08098-PCT-DGC<br><br>**ORDER** |

Pending before the Court is Plaintiffs' renewed motion for attorneys' fees under the Equal Access to Justice Act ("EAJA"), 28 U.S.C. § 2412(d). Doc. 142. The motion is fully briefed. Docs. 142, 153, 159. The Court will grant the motion in part.[1]

**I.**     **Relevant Facts.**

Arizona participates in Medicaid through the Arizona Health Care Cost Containment System ("AHCCCS"), which administers Arizona's Medicaid plan, its demonstration projects, and certain state-only initiatives. On March 31, 2011, Arizona submitted a request to the Secretary of Health and Human Services for approval of a proposed demonstration project under Section 1115 of the Social Security Act ("SSA"). The Secretary may approve any Section 1115 demonstration project that, in her[2]

---

[1] The requests for oral argument are denied because the issues have been fully briefed and oral argument will not aid the Court's decision. *See* Fed. R. Civ. P. 78(b); *Partridge v. Reich*, 141 F.3d 920, 926 (9th Cir. 1998).

[2] The Secretary at the time of the litigation in this case was a woman, and is now a man. The Court therefore will refer to the Secretary historically and "her" or "she" and currently as "he."

judgment, "is likely to assist in promoting the objectives" of specified SSA programs, including the Medicaid program. 42 U.S.C. § 1315(a). Arizona's proposed new project covered the childless adult population that had been covered by the previous 2001 demonstration project, but with enrollment frozen at lower levels. It also included a copayment rule which modified the 2001 demonstration project by increasing copayments for the childless adult population. On October 21, 2011, the Secretary approved the project for a five-year period, through September 30, 2016.

Plaintiffs brought this action in May 2012 to challenge the copayments imposed on childless adults. Plaintiffs argued that the Secretary's approval of the copayments violated the Administrative Procedure Act ("APA") and the SSA. This Court granted Plaintiffs' motion for class certification (Doc. 87), but denied their motion for a preliminary injunction (Doc. 88). On February 7, 2013, the Court determined that the Secretary's decision to approve the project was arbitrary and capricious because she failed to consider and address Plaintiffs' evidence and the expert opinion of Dr. Ku. Doc. 102 at 8, 18-22. The Court remanded the case to the Secretary for a new decision.

On April 8, 2013, the Secretary reaffirmed her prior decision and again approved Arizona's request. The parties briefed renewed motions for summary judgment, and the Court entered summary judgment in the Secretary's favor. Doc. 117. The Court held that the Secretary had reasonably determined that Arizona's proposed project met the Section 1115 factors, and denied Plaintiffs' request for attorneys' fees because it found that they were not "prevailing parties." The Ninth Circuit reversed that decision, holding that Plaintiffs "are entitled to prevailing party status with respect to the February 6, 2013 order remanding the approval of the Medicaid demonstration project to the Secretary." *Wood v. Burwell*, 837 F.3d 969, 978 (2016).

## II. Legal Standard.

Under the EAJA, the Court shall award attorneys' fees to a prevailing party unless the United States shows that its position was "substantially justified or that special circumstances make an award unjust." 28 U.S.C. § 2412(d)(1)(A); *Gutierrez v. Barnhart*,

274 F.3d 1255, 1258 (9th Cir. 2001). The Supreme Court's decision in *Hensley v. Eckerhart*, 461 U.S. 424 (1983), sets forth the analysis for attorneys' fees that applies to EAJA cases. *INS v. Jean*, 496 U.S. 154, 161 (1990); *Sorenson v. Mink*, 239 F.3d 1140, 1145 n.2 (9th Cir. 2001).

**III. Analysis.**

The Ninth Circuit held that Plaintiffs are entitled to prevailing party status. *See Wood*, 837 F.3d at 978. The Court must now determine whether: (1) the government's position was substantially justified, or (2) special circumstances make an award of attorneys' fees unjust. 28 U.S.C. § 2412(d)(1)(A); *see also Thangaraja v. Gonzales*, 428 F.3d 870, 873-75 (2005). If both answers are negative, the Court must also determine whether the attorneys' fees request is reasonable.

**A. Substantial Justification.**

"The government bears the burden of demonstrating substantial justification." *Thangaraja*, 428 F.3d at 874 (citing *Gonzales v. Free Speech Coalition,* 408 F.3d 613, 618 (9th Cir. 2005)). In the context of attorneys' fees determinations, the Ninth Circuit has held that: "'Substantial justification' is equated with 'reasonableness.'. . . The government's position is 'substantially justified' if it 'has a reasonable basis in law and fact.'" *Ramon-Sepulveda v. INS*, 863 F.2d 1458, 1459 (9th Cir. 1988) (quoting *Pierce v. Underwood*, 487 U.S. 552, 566 n.2 (1988)); *see also Al-Harbi v. INS*, 284 F.3d 1080, 1085 (9th Cir. 2002).

That this Court found the Secretary's initial decision to be arbitrary and capricious and not supported by substantial evidence is "a strong indication that the 'position of the [Secretary] in this matter was not substantially justified.'" *See Thangaraja*, 428 F.3d at 874 (quoting *Al-Harbi,* 284 F.3d at 1085). "Indeed, it will be only a 'decidedly unusual case in which there is substantial justification under the EAJA even though the agency's decision was reversed as lacking in reasonable, substantial and probative evidence in the record.'" *Id.*

The Secretary argues that "both the October 2011 and the April 2013 [agency] approvals [] had a 'reasonable basis in law and fact[,]'... even if the former was procedurally deficient[.]" Doc. 153 at 6. The Secretary also argues that he "prevailed on every material issue save one," and that "the sole issue on which he did not prevail was reasonable." *Id.* at 7-13. Both arguments are unpersuasive.

The Secretary's first argument can be reduced to a contention that attorneys' fees may not be awarded under the EAJA for procedural victories. But that contention is plainly incorrect. Courts routinely award attorneys' fees under the EAJA for procedural victories. *See, e.g.*, *Tobler v. Colvin*, 749 F.3d 830, 834-35 (9th Cir. 2014) (Social Security Disability remand); *Rueda-Menicucci v. INS*, 132 F.3d 493, 495 (9th Cir. 1997) (BIA remand); *Newton-Nations v. Betlach*, No. 03-cv-2506-PHX-ROS, at 4, 13 (D. Ariz. Aug. 22, 2014) (Medicaid case).

The Secretary's second argument is more appealing on its face, but ultimately unpersuasive. The Secretary argues that the Court must "assess the case holistically," even if the "suit contains multiple stages and rounds of briefing, and even if the parties' postures on individual matters during those phases may be more or less justified." Doc. 153 at 7 (citing *Jean*, 496 U.S. at 161-62 (internal quotations omitted)). "The matter for the Court to decide at present, then, is whether the government's position, *as a whole*, had a reasonable basis in law and fact." *Id.* (emphasis in original). The Secretary goes on to argue that when the balance of issues won is weighed against issues lost, the government's position was substantially justified. *Id.*

Courts in APA cases, however, often limit their focus to whether evidence in the administrative file was properly considered by the agency. *See, e.g.*, *Tobeler*, 749 F.3d at 834-35; *Rueda-Menicucci*, 132 F.3d at 495; *Flores v. Shalala*, 49 F.3d 562, 564 (9th Cir. 1995). In *Flores*, for example, a social security disability claimant brought an action asserting that a decision of the Secretary of Health and Human Services (HHS) denying benefits was not supported by substantial evidence. 49 F.3d at 564. The district court remanded for further proceedings. *Id.* at 565. Following a decision on remand that the

claimant was disabled for a closed period, but not thereafter, the district court denied claimant's motion for fees. *Id.* On appeal, the Ninth Circuit held that the district court improperly focused on post-remand proceedings on the ultimate issue of disability, and should instead have considered whether HHS was substantially justified with respect to the procedural issue which the court had remanded. *Id.* at 566. Applying the same focus here, the Secretary's position cannot be substantially justified given the Court's finding that it was arbitrary and capricious.

The Secretary contends that his position was reasonable, and thus substantially justified, because no "pellucid pronouncements on the Secretary's responsibilities vis-à-vis objections to demonstration projects" existed. Doc. 153 at 12. He argues that the Ninth Circuit has held that "it is not fair to conclude that every violation of a regulation or statute by an agency stamps its position as unreasonable[,]" and "[t]he government may avoid EAJA fees if it can prove that the regulation it violated was ambiguous, complex, or required exceptional analysis." *Meinhold v. U.S. Dep't of Def.*, 123 F.3d 1275, 1278 (9th Cir. 1997), *amended*, 131 F.3d 842 (9th Cir. 1997). But contrary to the Secretary's contention, the regulation violated was not ambiguous, complex, or requiring exceptional analysis. The regulation required the Secretary to consider objections, and no evidence in the reviewable record indicated that she did so. Indeed the Court found as much in its February 2013 opinion, stating:

> Here, as in *Beno*, the record contains no evidence that the Secretary considered or responded to Plaintiffs' substantive objections during the administrative process . . . . [or] that the Secretary considered plaintiffs' objections during the administrative process as she was required to do (*Beno*, 30 F.3d at 1075) or that she reasonably relied on her own expertise when she reached a conclusion that runs counter to the expert opinion submitted by Plaintiffs.

Doc. 102 at 15-18.

The Secretary argues that this case is distinguishable from *Beno* and *Newton-Nations*. Specifically, the Secretary argues that unlike in *Beno*, where the Secretary conceded that the information it failed to review was relevant to her inquiry, the Secretary in this case conceded no such thing. Doc. 153 at 12. "In short, the Secretary

reasonably believed that not every objection raised during the administrative process merits an on-the-record response, and reasonable minds may differ as to whether Plaintiffs' objection in this case was the sort of objection that did." *Id.* The Secretary lost the argument on relevance when the Court remanded the decision for failing to consider relevant evidence. Doc. 102 at 14-15 ("Plaintiffs submitted the Ku Declaration to DHHS as part of the administrative process . . . . Plaintiffs' administrative submission related to an important aspect of the Secretary's required analysis . . . [and] the Secretary was required to address Plaintiffs' submission and their contention that the opinion of Dr. Ku . . . applied in this case."). Plaintiffs' argument that "unlike *Newton-Nations*, the [Ku] Declaration that formed the basis of Plaintiffs' objections here was three years old and not targeted at the entire demonstration project" fails for the same reasons – the Court has already decided that the Ku Declaration was relevant and required analysis by the Secretary.

In sum, the Court concludes that this is not the "decidedly unusual case" where the Secretary's position was substantially justified even though the Court found it to be arbitrary and capricious. *Thangaraja*, 428 F.3d at 874.

### B. Special Circumstances.

The EAJA does not allow fees in cases where "special circumstances make an award unjust." 28 U.S.C. § 2415(d)(1)(A). The Secretary argues that this case falls within the special circumstances exception "because Plaintiffs sought relief that, if awarded, would have provided the plaintiff class no benefit, and in fact would have harmed the class." Doc. 153 at 13. The Secretary's contention is not well taken.

To start, the Secretary does not cite, and the Court has not found, any Ninth Circuit authority denying a party's fee request under the EAJA because circumstances made the award unjust. Instead, the Secretary argues that if Plaintiffs had received the vacatur they sought, it would have forced Arizona to stop covering childless adults. Plaintiffs respond that the Secretary's contention is not true. Arizona voters expanded Arizona's Medicaid program through a voter initiative (Prop 204 in the 2000 election

cycle), and the Legislature cannot repeal an initiative that has been approved by the majority of votes cast. Accordingly, even if the copay provision was to be struck, and the Legislature wanted to reduce the enrollment eligibility for childless adults due to budgetary concerns, they could do no such thing. In fact, Plaintiffs note that at the "beginning January 1, 2014 and continuing through 2016, AHCCCS stopped charging *any* copayments to Plaintiffs," but "the expanded coverage for childless adults continued unabated." Doc. 159 at 9 (emphasis in original).

What is more, Plaintiffs obtained the relief they sought under the APA without losing their benefits. The Court finds that the Secretary has not met its burden of showing that special circumstances make a fee award unjust.

**C.  Reasonableness.**

Plaintiffs seek a total of $171,733 in attorneys' fees and $1,299.07 in out-of-pocket costs of the appeal. Doc. 159 at 16. The Secretary concedes that Plaintiffs are entitled to the costs, but argues that the attorneys' fees request is unreasonable. Doc. 153 at 15-21.

An award of fees under the EAJA must be reasonable. 28 U.S.C. § 2412(d)(2)(A). "The most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Hensley*, 461 U.S. at 433. In the case of fees sought under the EAJA, the "reasonable hourly rate" is capped by the EAJA itself. 28 U.S.C. § 2412(d)(2)(A). Thus, the equation is the number of hours reasonably expended multiplied by the applicable EAJA rates. *Ibrahim v. U.S. Dep't of Homeland Sec.*, 835 F.3d 1048, 1060 (9th Cir. 2016). The resulting figure, known as the lodestar figure, forms the basis for the remainder of the Court's analysis of reasonableness. *Id.*

Plaintiffs request that the Court award fees related to 232.27 hours of work prior to the appeal at the rate of $350 per hour, for a total of $81,294; 159.90 hours of work on the appeal and remand through January 3, 2017, at the rate of $425 per hour, for a total of $67,957; and 64.9 hours of work on the renewed fees motion between January 3, 2017

and February 23, 2017 at the rate of $425 per hour, for a total of $22,482. Doc. 159 at 16.

Two attorneys worked on Plaintiffs' case prior to the appeal: lead counsel Ellen Sue Katz, and counsel Jane Perkins. Doc. 119-1 at 9-14. On appeal, Ms. Katz and Ms. Perkins were joined by Richard Rothschild. Doc. 142-4 at 1-5 (Rothschild Declaration). All three attorneys have remained on the case since that time.

The expertise of Ms. Katz and Ms. Perkins in the field of Medicaid law is undisputed. Ms. Katz has practiced law in Arizona for nearly 30 years. Doc. 119-4, ¶¶ 3-4. She has litigated numerous class and policy cases, and is "one of the most experienced and skilled attorneys in Medicaid law in Arizona." *Id.*, ¶¶ 12-13. Ms. Perkins has been in the field for over 30 years, is the Legal Director of the National Health Law Program, and has served as lead or co-counsel in numerous complex Medicaid and/or class action cases. Doc. 119-3, ¶¶ 2-6. Both Ms. Katz and Ms. Perkins request an hourly rate of $350.00 for work completed prior to the appeal (*id.*, ¶ 11; Doc. 119-4, ¶ 19), and $425.00 per hour for work completed during and after the appeal (Doc. 142 at 2).

Mr. Rothschild has been the Executive Director of the Arizona Center for Law in the Public Interest for over 20 years. Doc. 142-3, ¶ 3. He describes his practice in recent years as having "generally been in the areas of complex school finance and education litigation, utility and energy issues, and to a lesser extent, environmental and healthcare matters." *Id.*, ¶ 5. Like Ms. Katz and Ms. Perkins, Mr. Rothschild requests $425.00 per hour for his work on Plaintiffs' appeal and supplemental motion for attorneys' fees.

### 1. Limited Success.

If the Court concludes that the prevailing party achieved "excellent results," it may award the fees in full. *Hensley*, 461 U.S. at 435; *Schwarz v. Sec'y of Health & Human Serv.*, 73 F.3d 895, 905-06 (9th Cir. 1995). But where a plaintiff has not achieved results warranting a full recovery, the Court "may apply a downward adjustment to the lodestar by 'award[ing] only that amount of fees that is reasonable in relation to the results

obtained.'" *Ibrahim*, 835 F.3d at 1060 (citing *Hensley*, 461 U.S. at 440). The Supreme Court has noted that "the extent of a plaintiff's success is a crucial factor in determining the proper amount of an award of attorney's fees[.]" *Hensley*, 461 U.S. at 440. The Ninth Circuit has likewise noted that "[t]he time, to be compensated in an award, must be reasonable in relation to the success achieved. It is an abuse of discretion for the district court to award attorneys' fees without considering the relationship between the extent of success and the amount of the fee award." *McGinnis v. Kentucky Fried Chicken of California*, 51 F.3d 805, 810 (9th Cir. 1994) (quotation marks omitted) (citing *Hensley*, 461 U.S. at 436; *Farrar v. Hobby*, 506 U.S. 103, 114 (1992)).

To determine fees in cases of partial success "[a] court must consider (1) whether 'the plaintiff fail[ed] to prevail on claims that were unrelated to the claims on which he succeeded,' and (2) whether 'the plaintiff achiev[ed] a level of success that makes the hours reasonably expended a satisfactory basis for making a fee award.'" *Watson v. County of Riverside,* 300 F.3d 1092, 1096 (9th Cir. 2002) (quoting *Hensley,* 461 U.S. at 434). "[C]laims are *unrelated* if the successful and unsuccessful claims are 'distinctly different' *both* legally *and* factually," *Webb v. Sloan*, 330 F.3d 1158, 1169 (9th Cir. 2003) (quoting *Schwarz*, 73 F.3d at 902-03); and the claims are related if they "involve a common core of facts *or* are based on related legal theories," *id.* at 1168. "[T]he focus is on whether the unsuccessful and successful claims arose out of the same course of conduct." *Id.* at 1169. If they did not, the hours expended on the unsuccessful claims should not be included in the fee award. *Id.*; *Schwarz*, 73 F.3d at 901.

The Court concludes that Plaintiffs' successful and unsuccessful claims are related because they clearly arise out of the same common core of facts. Specifically, all claims arose out of the Secretary's approval of the waiver demonstration project. While the legal theories underlying the claims were distinct, one attacking the merits of the decision and the other attacking the Secretary's procedural failure in reaching that decision, no case law that the Court could find distinguishes between claims arising from the same facts. *See Webb*, 330 F.3d at 1169; *Newton-Nations*, No. 03-cv-2506-PHX-ROS, at 8.

At step two, the Court "evaluates the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation." *Schwarz*, 73 F.3d at 902-03 (internal quotation marks and citations omitted). "Where a plaintiff has obtained excellent results, his attorney should recover a fully compensatory fee." *Hensley,* 461 U.S. at 435. When "a plaintiff has achieved only partial or limited success, the product of hours reasonably expended on the litigation as a whole times a reasonable hourly rate may be an excessive amount." *Id.* at 436. A plaintiff does not need to receive all requested relief in order to show excellent results warranting the fully compensatory fee. *Id.* at 435 n.11; *Sorenson*, 239 F.3d at 1147.

In this case, Plaintiffs obtained a remand for further consideration by the Secretary, which was enough to be the prevailing parties, but they did not achieve their ultimate objective of reducing the copayment provision of the demonstration project. Faced with a virtually identical situation, the court in a related case held that Plaintiffs' did not receive excellent results. *See Newton-Nations*, No. 03-cv-2506-PHX-ROS, at 8-10. The *Newton-Nations* case involved a challenge to the demonstration projects' previous co-payment provision. *Id.* The *Newton-Nations* court stated:

> Plaintiffs got no relief which would bind the Secretary in future determinations and records related to the appropriate level of copayments charged to expansion populations. This is an important point because the Ninth Circuit's ruling meant the Secretary was free to develop a better administrative record and impose increased copayments again. . . . Thus, unlike some cases leading to lasting results, this lawsuit caused no meaningful change in the Secretary's position regarding copayments. *Cf. Natural Resources Defense Council, Inc. v. Winter*, 543 F.3d 1152, 1163 (9th Cir. 2008) (findings results "excellent" where lawsuits caused Navy to "substantially chang[e] its position").

*Id.* at 9 (internal quotations and docket citations omitted).

Although Plaintiffs' result "can hardly be described as leaving 'emptyhanded'" (*Wood*, 837 F.3d at 974-75), it is just as much of a stretch to call it "excellent." The Court concludes that a reduction for limited success is appropriate. The Ninth Circuit has stated that, in general, "limited success should be addressed in the lodestar calculation by deducting specific hours" rather than a percentage adjustment. *Muniz v. United Parcel*

*Service, Inc.*, 738 F.3d 214, 225 (9th Cir. 2013). But the Ninth Circuit has also recognized that "[m]athematically, it is inconsequential whether the lodestar figure itself is adjusted for lack of success. What matters is that the district court [does] not 'count' for lack of success twice." *Cabrales v. County of Los Angeles*, 864 F.2d 1454, 1465 (9th Cir. 1988) *vacated on other grounds*, 490 U.S. 1087 (1989).

There is no clear guidance from the Ninth Circuit on how a percentage reduction should be calculated, but judges "need not, and indeed should not, become green-eyeshade accountants." *Fox v. Vice*, 131 S. Ct. 2205, 2216 (2011). "The essential goal in shifting fees . . . is to do rough justice, not to achieve auditing perfection." *Id.* Therefore, in awarding fees, "courts may take into account their overall sense of a suit, and may use estimates in calculating and allocating an attorney's time." *Id.* With this in mind, the Court finds that a 30% reduction in the lodestar value is appropriate to account for Plaintiffs' limited success. This reduction will result in a fee award that reflects Plaintiffs' significant success in obtaining a remand of the Secretary's decision, while also recognizing the reality that Plaintiffs did not achieve their ultimate goal of reducing or eliminating the copayments.

### 2. Hourly Rate.

Under the EAJA, "attorneys' fees shall not be awarded in excess of $125 per hour unless the court determines that an increase in the cost of living or a special factor, such as the limited availability of qualified attorneys for the proceedings involved, justifies a higher fee." 28 U.S.C. § 2412(d)(2)(A)(ii). Enhanced hourly rates are commonly awarded under the EAJA where the attorneys possess a distinctive knowledge and specialized skill that was needed for the litigation in question and is not available elsewhere for the same rate. *See, e.g.*, *Nadaranjah v. Holder*, 569 F.3d 906, 912-13 (9th Cir. 2009) (holding that three attorneys were entitled to enhanced fees under the EAJA because they possessed an expertise in immigration law and that expertise was necessary for the litigation at issue).

Plaintiffs argue that "[t]he special factors of limited availability of Medicaid litigators and particular expertise qualify Plaintiffs for a market-rate EAJA award in this case." Doc. 146 at 10. In support of their position, Plaintiffs submit the declarations of Patricia Gerrich (Doc. 119-5, ¶¶ 8-10) and Timothy Hogan (Doc. 119-6, ¶ 9). Ms. Gerrich states that the Volunteer Lawyers Program cannot find attorneys to take an individual Medicaid case. Doc. 119-5. Additionally, both Ms. Gerrich and Mr. Hogan assert that if Plaintiffs' counsel had not taken this case, no one else would have represented Plaintiffs. *Id.*; Doc. 119-6.

The Secretary disagrees, arguing that this case "involved a straightforward challenge to agency action under the Administrative Procedure Act[,]" and "Plaintiffs did not prevail on the arguments they made specific to the Medicaid program including those related to their interpretations of Section 1115." Doc. 153 at 17. The Secretary further argues that "even if the merits stage of this case required some specialized expertise, the two fee petitions and the appeal certainly did not." *Id.* at 18.

The Ninth Circuit has taken a particularly liberal view on what qualifies as a special factor. *See, e.g.*, *Love v. Reilly*, 924 F.2d 1492, 1496 (9th Cir.1991) (holding that insecticide litigation expertise, coupled with federal preliminary injunction experience, constituted "special factor"); *Nat'l Wildlife Fed'n v. F.E.R.C.*, 870 F.2d 542, 547 (9th Cir. 1989) *abrogated on other grounds by Jean*, 496 U.S. at 157 (holding that expertise in environmental law, with specialty in "complex regulatory issues involved in hydropower regulation and public land forestry," constituted a "special factor," and that the key criterion for "special factor" enhancement is an attorney's "mastery of a technical subject matter gained by the investment of time and energy").

The *Newton-Nations* decision is instructive. Just like this case, *Newton-Nations* considered whether the Secretary's approval of the co-payment demonstration project was appropriate. The court ultimately found that it was, but also found that the Secretary violated the APA when she failed to consider all relevant information during the approval process. The Secretary did not argue that Plaintiffs' counsel was not skilled, or did not

possess an expertise in Medicaid or Social Security law. *Id.* at 11. Nor did the Secretary dispute that similarly skilled counsel were not available elsewhere at the statutory rate. *Id.* Instead, the Secretary opposed the enhanced fee by arguing that Plaintiffs' counsel's specialized skills were not needed in the case. *Id.* at 11-12. In deciding that Plaintiffs' counsel was entitled to the enhanced fee, the *Newton-Nations* court stated the following:

> The Secretary is correct that the most complicated arguments—the arguments that especially required counsel's unique skills—were rejected. But the APA claim on which Plaintiffs succeeded was not as straightforward as the Secretary now claims. In fact, the Secretary herself concedes elsewhere in her brief that the APA claim was difficult because it was unclear "just how much support was required to approve relatively modest copayments." If the Secretary were correct that this was simply a "garden variety question of administrative law," it is unclear why the Secretary failed so miserably at it. In truth, the question was complicated and demanded special expertise. *Newton-Nations*, 660 F.3d at 380-81. Accordingly, Plaintiffs' counsel possess distinctive skills, needed in this case, that were not available elsewhere. *See also Nadarajah v. Holder*, 569 F.3d 906, 914 (9th Cir. 2009) (enhanced fee appropriate because "knowledge of . . . particular, esoteric nooks and crannies of immigration law" was needed to prevail). A fee enhancement is appropriate.

*Newton-Nations*, No. 03-cv-2506-PHX-ROS, at 12 (internal docket citations removed for clarity).

The Secretary makes virtually identical arguments against a fee enhancement for Plaintiffs' counsel in this case. *See* Doc. 153 at 15-17. Given the Ninth Circuit's liberal position on whether a special factor is present and the prior decisions in this District on the very issue, the Court finds that Plaintiffs' counsel are entitled to enhanced fees.

Based on the evidence submitted by Plaintiffs, a fee enhancement to $350 per hour is appropriate for the time invested in this case. The Court views this as reflecting a reasonable prevailing rate for Arizona. As discussed above, Plaintiffs have submitted affidavits from local attorneys averring that counsel's requested rate is reasonable for attorneys of similar skill, experience, and reputation. Doc. 119; Doc 142. The Court cannot conclude, however, that Plaintiffs' counsel should receive the higher rate of $425 per hour for the appeal and post-appeal portions of the case. Those phases of the litigation were important, but they focused primarily on the recovery of attorneys' fees and did not require the same level of Medicaid expertise required by earlier phases.

Accordingly, the Court finds that an hourly rate of $350 is reasonable for all work completed by Plaintiffs' counsel in this case.

### 3. Hours Expended.

The Secretary argues that Plaintiffs' request of non-merits fees – for 23.45 hours on their first motion for fees, and 159.9 hours for their appeal and remand, totaling 183.35 hours in all – is excessive when compared to the 208.82 hours Plaintiffs claimed for all merits work in this case. Doc. 153 at 16. But the Secretary fails to point to any specific instances of excessive billing. The bulk of the Secretary's argument is that because Plaintiffs' counsel represented another group of Plaintiffs in a substantially similar litigation, the Court should apply "an expectation of efficiency from repeat briefing." *Id.* (referencing the prior litigation, *Newton-Nations*, No. 03-cv-2506-PHX-ROS). But the Secretary ignores the fact that the total hours billed by Plaintiffs' counsel in *Newton-Nations* was nearly 1,300 hours. Prior to the appeal, Plaintiffs in this case billed just over 200.

Plaintiffs have submitted an itemized list of hours billed and, after review, the Court does not find the entries to be excessive or duplicative. *See* Docs. 119-8; 119-9; 142-1 at 5-7; 142-2 at 5-6; 142-4 at 14-17. Accordingly, the amount of hours billed is reasonable in context of the entire litigation.

### 4. Lodestar Value.

The Court has found that $350 is a reasonable hourly rate for Plaintiffs' counsel's work completed both before and after appeal. Plaintiffs submit that Plaintiffs' counsel billed 232.27 hours for work prior to the appeal, 159.90 hours for work on the appeal and remand, through January 3, 2017; and 64.9 hours for work on the renewed fees motion between January 3, 2017 and February 23, 2017. Doc. 159 at 16.

The Court finds that the time spent on the supplemental motion for attorneys' fees was excessive. Accordingly, the Court will reduce the hours billed on that motion to 30 hours. Following this modification, the lodestar value comes to $147,759.50.[3]

---

[3] $(232.27 + 159.9 + 30) * 350 = \$147{,}759.50 =$ Lodestar value.

### 5. Kerr Factors.

The Court must also consider the *Kerr* factors that have not been subsumed within the initial lodestar calculation. *See Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67, 70 (9th Cir. 1975); *see also Cunningham v. County of Los Angeles*, 879 F.2d 481, 487 (9th Cir. 1988). These factors are: "(1) the novelty and complexity of the issues, (2) the special skill and experience of counsel, (3) the quality of representation, and (4) the results obtained." *Jordan v. Multnomah County*, 815 F.2d 1258, 1262 n.6 (9th Cir. 1987).

The Secretary argues that the Court should reduce any attorneys' fees award by 85% "to reflect the minimal nature of Plaintiff's success in this litigation." Doc. 153 at 15-17. The Secretary provides no basis for his proposed reduction other than to say that "because counsel for Plaintiffs were also counsel for plaintiffs in *Newton-Nations*, in which they raised many of the same arguments, an expectation of efficiency from repeat briefing should result in a reduction of greater than 60% in this case." *Id.* at 16.

The Secretary's proposed reduction is excessive. The court in *Newton-Nations* reduced fees by 60% because of the plaintiffs' limited success and the fact that counsel in that case billed nearly 1,300 hours – approximately triple the amount of hours billed by Plaintiffs' counsel in this case. As discussed above, the Court will apply a 30% reduction to the lodestar value based on Plaintiffs' limited success. No further reduction based on the Kerr factors is warranted.

**IT IS ORDERED** that Plaintiffs' motion for attorneys' fees (Doc. 142) is **granted in part**. The Court awards Plaintiffs' counsel $103,431.65[4] in attorneys' fees and $1,299.07 in out-of-pocket costs.

Dated this 19th day of April, 2017.

David G. Campbell
United States District Judge

---

[4] $147,759.5 * 0.7 = $103,431.65

- 15 -